IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| STAR TEAMS, INC., | ) | |
| Plaintiff, | ) ) ) | NO. 2:22-cv-00022 |
| v. | ) ) | JUDGE RICHARDSON |
| TRANSPLANT ADVOCATES, LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion for Temporary Restraining Order[1] (Doc. No. 2, "Motion"), filed by Plaintiff STAR Teams, Inc. together with a memorandum in support (Doc. No. 3, "Plaintiff's Memorandum"). On March 9, 2022, the Court issued an order providing Defendant the opportunity to respond, which Defendant did. (Doc. No. 15, "Response"). Plaintiff filed a reply (Doc. No. 19, "Reply"), and the Motion is ripe for review insofar as it requests a temporary restraining order ("TRO").

## BACKGROUND[2]

---

[1] The Motion in question actually requests both a Temporary Restraining Order and a Preliminary Injunction. (Doc. No. 2). However, at this juncture, the Court is considering only the request for a Temporary Restraining Order. As a procedural matter, Plaintiff is appropriately afforded additional time to marshal support for the Motion's less time-sensitive request for a preliminary injunction, and the Court thus declines to reject herein that request in the same manner it is rejecting the request for a TRO.

[2] For purposes of ruling on a TRO, the Court typically takes as true facts that fit into the following categories: facts "(1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice." *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2019 WL 6050283, at *1 n.1 (M.D. Tenn. Nov. 15, 2019). The facts stated herein are taken from Plaintiff's "Verified Complaint" (Doc. No. 1) and Plaintiff's Memorandum, which Plaintiff supported with the Declaration of Preben Brandenhoff, M.D., a "business

Plaintiff, Specialized Transplant AI-adapted Recovery ("STAR") Teams, provides services for organ recovery, using an approach based on a military-style Special Ops team in which it builds recovery teams that operate regionally and independently of any single institution. (Doc. No. 1 at ¶¶ 10–12). Board-certified transplant surgeons and transplant professionals dedicated to organ recovery comprise Plaintiff's team. (*Id.* at ¶ 13). Plaintiff's teams' integrated practice is among the largest transplant organ recovery-specialty medical groups. (*Id.* at ¶ 16).

Plaintiff's employees and affiliates sign non-disclosure and restrictive covenants, given "the confidential information shared with those who work with" Plaintiff. (*Id.* at ¶ 20; Doc. No. 1-2, "NDA"). Per the NDA, Plaintiff's affiliates have an obligation not to work or affiliate with any of Plaintiff's competitors while still working with Plaintiff and for a year after the end of their professional relationship. (Doc. No. 1 at ¶ 21). Additionally, Plaintiff's employees and affiliates have an obligation not to allow their name or likeness be used to promote any competing business. (*Id.* at ¶ 22).

Defendant, Transplant Advocates, offers organ transplant services and is Plaintiff's direct competitor. (*Id.* at ¶¶ 23–24). Candy St. Marie, Plaintiff's former employee, is Defendant's Chief Executive Officer and founder. (*Id.* at ¶¶ 25–26, 29). Defendant employs a team of surgeons, surgical assistants, organ preservations, coordinators, flight crews, ground transplant, and couriers. (*Id.* at ¶ 29).

---

associate" of STAR Teams (Doc. No. 3-3), the Declaration of David Hormuth, M.D., a physician that works with STAR Teams (Doc. No. 3-4), and the Declaration of Hiroko Matsuyama, a surgical assistant that works with STAR Teams (Doc. No. 3-5). Given that these documents assert the facts set forth in this section, and given the absence thus far of significant pushback from Defendant regarding the accuracy of these facts, the Court accepts them as true for purposes of ruling on the request for a TRO.

The Court is constrained to note that for whatever reason—administrative error, technical glitch, lack of appropriate verifier, or otherwise—the purportedly verified complaint (Doc. No. 1) in fact is not verified by anything filed on the docket, and the Court proceeds accordingly.

Defendant's website, which describes its mission and displays its team members, includes a home page, a "Services" page, and an "About Us" page, which displays Defendant's team members and details the type of service Defendant aims to provide. (*Id.* at ¶¶ 30–32). Defendant's website includes pictures of Plaintiff's surgeons, administrative staff, and affiliates, which Plaintiff never authorized. (*Id.* at ¶¶ 33, 39). Defendant used Plaintiff's employees and affiliates' images and likenesses with neither their knowledge nor Plaintiff's permission. (*Id.* at ¶ 40). Plaintiff's employees and affiliates who were featured multiple times on Defendant's website do not work for or have a formal affiliation with Defendant. (*Id.* at ¶ 41).

Plaintiff filed the present Motion seeking entry of a TRO (and preliminary injunction) prohibiting Defendant from "continuing to utilize images of STAR's employees and affiliates on its website." (Doc. No. 3 at 17).

### LEGAL STANDARD: TEMPORARY RESTRAINING ORDER

TROs and preliminary injunctions are considered extraordinary relief. *See Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972). A TRO should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to issue a TRO pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others;[3] and (4)

---

[3] The reference here to "others" appears to be a reference to third parties, *i.e.,* those not parties to the lawsuit in which the TRO is sought. *See, e.g.*, *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 957 (6th Cir. 2013) (discussing this factor in terms of "harm to third parties"); *Rhinehart v. Scutt*, 509 F. App'x 510, 512 (6th Cir. 2013) (affirming issuance of preliminary injunction by the district court, which "understood this factor to refer to harm to third parties"); *Hitachi Auto. Sys. Americas, Inc. v. TI Auto.*

the impact of the injunction on the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006).

As the Sixth Circuit has described this test (in the context of a motion for a preliminary injunction):

> Courts sometimes describe this inquiry as a balancing test. *See, e.g.*, *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). And that's true, to an extent; district courts weigh the strength of the four factors against one another. But even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit. *See id.* at 103; *see also* Wright et al., *supra*, § 2948.1 (Irreparable injury is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction[.]"). That's why this circuit has held that a district court abuses its discretion "when it grants a preliminary injunction without making specific findings of irreparable injury[.]" *Friendship Materials*, 679 F.2d at 105. Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory.

*D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019).

This means (among other things) that although courts sometimes state that these four factors are "factors to be balanced, not prerequisites that must be met," *Michael v. Futhey*, 2009 WL 4981688, at *17 (6th Cir. Dec. 22, 2009) (quoting *Six Clinic Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997), this statement is inexact. As plainly indicated in *Sumner Cnty. Schools*, the third factor, irreparable injury, actually *is* a prerequisite. Indeed, "[t]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002). In sum, a TRO can be issued

---

*Ligonier Corp.*, No. 5:19-CV-184-JMH, 2019 WL 1995316, at *5 (E.D. Ky. May 6, 2019) (describing this factor, in a single sentence, in terms of "harm to other parties that are not parties to this lawsuit" and in terms of "harm to third-parties").

only if the plaintiff can make a showing that irreparable injury would ensue absent the issuance of the requested TRO.

But where such a showing is made by the plaintiff, it carries great weight. In some cases, it can even overcome the lack of a showing of likelihood of success on the merits (which, as noted below, is usually fatal to the plaintiff's efforts). Specifically, the Sixth Circuit permits a district court, in its discretion, to grant a preliminary injunction or temporary restraining order "even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials*, 679 F.2d at 105.

As just noted, in some cases a plaintiff can prevail even if the court does not affirmatively find that there *is* a likelihood of success on the merits. But if the court finds that there is *not* a likelihood of success on the merits, the plaintiff generally will not prevail, because "[a] finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000).

## **ANALYSIS**

Plaintiff argues that its requested TRO is supported by all of the factors a court considers when determining whether to issue a TRO. (Doc. No. 3 at 17). Because a finding of irreparable harm is necessary for granting a TRO, the Court will first consider whether Plaintiff has sufficiently shown that it will experience irreparable injury absent the requested injunction. If the Court were to find that Plaintiff has carried its burden to show such harm, then the Court would proceed with consideration of the other three factors. But for the reasons explained below, the Court does not so find.

1. <u>Plaintiff has failed to show it will suffer an irreparable injury without the requested TRO.</u>

Plaintiff argues that it will likely suffer "immediate and irreparable injury" without an injunction because (according to Plaintiff) Defendant's use of images on its website depicting STAR employees and affiliates is causing customer confusion and "could continue to weaken STAR's strong customer relationships." (Doc. No. 3 at 15). In the text of its argument, Plaintiff fails to cite to any evidence supporting this notion. However, Plaintiff does attach a declaration from Dr. Preben Brandenhoff, "a business associate of STAR Teams, Inc.", to the TRO, which the Court will consider as evidence for this contention. (Doc. No. 3-3) In the declaration, Dr. Brandenhoff explains that he recently viewed Defendant's website and "recognized member of STAR's team." (*Id.*). He also states that the website "created the impression" that the individuals "were now working or affiliated with Transplant Advocates." (*Id.*).

Plaintiff additionally argues that Defendant's use of images of STAR's team members is "placing STAR's employees and affiliates in breach of their NDAs" (Doc. No. 3 at 16). As evidence for this belief, Plaintiff cites to two additional declarations from Dr. David Hormuth and Hiroko Matsuyama, both current employees of STAR. (Doc. Nos. 3-4 and 3-5). The two declarations state that the individuals "have an obligation not to allow [their] name or likeness to be used in any way to promote any competitive business while working with STAR Teams, Inc." (*Id.*). Plaintiff additionally includes a copy of the two individual's signed NDAs, which note the same restriction they mentioned in their declarations. (Doc. No. 3-2 at 4, 9).

Plaintiff's first identified source of harm, loss of customer goodwill, can "often amount[] to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511–12 (6th Cir. 1992). However, Plaintiff here has

offered virtually no evidence of any lost goodwill in its customer base.[4] The declaration of Dr. Brandenhoff states only that he was confused by the images on Defendant's website but does not say that such confusion did or even could have caused him to end or change his business relationship with Plaintiff. Nor does his declaration suggest how Plaintiff otherwise could be harmed—let alone irreparably—by the avowed confusion.

Plaintiff cites two cases to support the notion that loss of customer goodwill or customer confusion is evidence of irreparable harm: *Basicomputer Corp.*, 973 F.2d 507 and *AmeriGas Propane, Inc. v. Crook*, 844 F. Supp. 379, 384 (M.D. Tenn. 1993). But both of those cases refer to the plaintiff's submission of evidence showing significant impacts on the business in question. In *Basicomputer*, the District Court determined that the defendants solicited the plaintiff's business, resulting in a drop of plaintiff's sales by "$500,000 per month." 791 F. Supp. 1280, 1283 (N.D. Ohio 1991), *aff'd*, 973 F.2d 507. And in *AmeriGas*, the District Court determined that the

---

[4] Though not included under its argument for irreparable injury, the following is asserted in Plaintiff's Memorandum:

> This misrepresentation is not only causing potential confusion among STAR's current clients and business prospects, but Transplant Advocate's misrepresentation is also creating actual confusion as STAR has been questioned by several of its clients including: Inova Fairfax Hospital, Northwell Health, MedStar Health, The Ohio State University, University of Pittsburgh Medical Center, Johns Hopkins University, St. Vincent's Hospital (Indiana), University of Maryland, Hershey Medical Center (Penn State) as to whether Transplant Advocates now employs STAR's surgical team and administrative staff.

(Doc. No. 3 at 8-9). However, Plaintiff here does not assert that any of these clients actually asked questions *about the photos on Defendant's website*. As for the questioning that Plaintiff *does* mention here (i.*e.*, questioning as to whether Defendant "now employs STAR's surgical team and administrative staff"), Plaintiff does claim in its Verified Complaint (Doc, No. 1 at ¶¶ 4, 43, 52) that such questioning occurred, but as noted above, the Verified Complaint is not actually verified as filed, and so nothing therein (or, for that matter, anywhere else in the current record) counts as evidence that such questioning actually occurred. Still less is there any evidence (or indeed any assertion by Plaintiff) that the alleged questioning involved or was caused by the photos on Defendant's website. Therefore, the Court will not consider the above-quoted assertion, or the three paragraphs of the Verified Complaint just cited, as offering evidence of an irreparable injury to Plaintiff's customer goodwill.

defendants had successfully poached 106 of the plaintiff's customers. Here, Plaintiff has provided no evidence of losing even a single customer because of the images on Defendant's website.

Plaintiff's second identified source of harm was the potential for the images to cause Plaintiff's employees to breach their NDAs. Not only does Plaintiff provide no supporting case law for its argument that a potential breach of a likeness-usage restriction in an NDA can constitute an *irreparable* injury, but the record suggests that the potential harm—potential violations of an NDA to which Plaintiff is a party—appears to be resolved. The two STAR employees Plaintiff identified as being at risk of violating their NDAs were Dr. David Hormuth and Hiroko Matsuyama. As Defendant noted in its response, the photographs of those two individuals have been removed from Transplant Advocates' website. (Doc. Nos. 15 at 7, 15-1 at 6). With the removal of the photos, Dr. Hormuth and Ms. Matsuyama are no longer at any risk of violating their NDAs because of said images, and therefore there is no longer any risk of injury to Plaintiff.

As to its first argument, Plaintiff has offered no evidence that any of its customer relationships have been negatively impacted because of the photos on Defendant's website. Moreover, Plaintiff has offered minimal evidence of customer confusion caused by the presence of the photos on Defendant's website, and no evidence that any such confusion would cause irreparable harm. As to its second argument, Plaintiff identified only a potential issue that appears to have already been resolved and failed to identify any ongoing issue at risk of causing "certain and immediate" harm. *See Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) ("In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical." (citing *Wisconsin Gas Co. v. Federal Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985))).

To put it simply, Plaintiff has not shown it is at risk of any "irreparable injury" because of the images on Defendant's website. Therefore, Plaintiff has failed to carry its burden of showing why the extraordinary remedy of a TRO should be granted, and its Motion will be denied to the extent that it requests a TRO.

2. The Court declines to consider the other three factors.

In light of its determination that Plaintiff has failed to show a threat of an irreparable injury, Plaintiff will be unable to carry its burden of demonstrating why a TRO should be granted, irrespective of how Plaintiff might fare on the other factors. *See Sumner Cnty. Schools*, 942 F.3d at 326-27 ("[E]ven the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." (internal quotation omitted)); *Patio Enclosures*, 39 F. App'x at 967 ("The demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."). Accordingly, the Court declines to analyze the other three factors.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion is **DENIED IN PART and DEFERRED IN PART**. Specifically, the Motion is denied insofar as it requests a TRO and is deferred insofar as it requests a preliminary injunction.

A hearing on the Motion's pending request for a Preliminary Injunction will be scheduled in a separate order.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE